IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>HURLEY DEWAYNE PITTS,<br><br>*Defendant*. | Case No. CR-20-011-RAW |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America by and through Acting United States Attorney Christopher J. Wilson and Assistant United States Attorney Clay A. Compton and respectfully submit this sentencing memorandum discussing relevant factors relating to the appropriate sentence in this case. In support of a sentence at the top of the appropriate guideline range, the United States submits the following:

**BACKGROUND**

1. On February 11, 2020, the Defendant was indicted by a federal grand jury with violating Title 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1), Felon in Possession of Firearm and Ammunition. (Doc.2)

2. On February 12, 2020, the Defendant was arraigned on the indictment. The Government filed a motion for detention and the Defendant moved for a detention hearing. The Defendant was ordered remanded to the custody of USMS pending the detention hearing. (Doc. 12).

3. On February 18, 2020, the Defendant was ordered remanded to the custody of the U.S. Marshal at a detention hearing as the Court found there was a "serious risk" that the Defendant would "endanger the safety of another person or the community." (Doc. 18).

4. On March 10, 2020, the Defendant was indicted, in a superseding indictment, by a federal grand jury with violating Title 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1), Felon in Possession of Firearm and Ammunition, as well as Title 18 U.S.C. § § 115(a)(1)(A) and 115(b)(4), Influencing Federal Official by Threatening Family Member.  (Doc. 25).

5. On March 18, 2020, the Defendant was arraigned on the superseding indictment and was ordered remanded to the custody of the U.S. Marshal.  (Doc. 31).

6. On July, 29 2020, the Defendant entered a guilty plea to Counts 1 and 2 of the superseding indictment. (Doc. 55).  The Defendant's plea was pursuant to a written plea agreement where, in exchange for his guilty plea, the United States agreed to recommend the low end of the sentencing guideline range should the Defendant be determined to be an Armed Career Criminal. (Doc. 57).

7. On October 9, 2020, the United States Probation Office issued the draft presentence report (PSR) finding an adjusted offense level of 29 and a criminal history category of VI.  The draft PSR established an advisory guideline range of 151 to 188 months.  (Doc. 63).

8. The Government objected to the draft PSR in that it failed to recognize the Defendant as an armed career criminal based upon his extensive criminal history.  Specifically, the Government relied upon three prior convictions it believed to be violent felonies – Forcible Sodomy, Assault and/or Battery with a Dangerous Weapon, and Aggravated Assault Causing Serious Bodily Injury.  Should the Defendant not qualify as an armed career criminal, the Government agreed with the advisory guideline range provided in the draft PSR.  (Doc. 66).

9. The final PSR was issued by the United States Probation Office on January 29, 2021.  The report found that the Defendant was an armed career criminal under 18 U.S.C § 924(e)

and revised the final adjusted offense level to 31 with a criminal history category of VI; thus establishing an advisory sentencing range of 188 to 255 months. (Doc. 68).

10. On February 18, 2021, the Defendant objected to the final PSR stating that the Defendant did not qualify as an armed career criminal since forcible sodomy in Oklahoma does not constitute a "violent crime" for purposes of 18 U.S.C § 924(e) and that the PSR did not provide details regarding the Aggravated Assault Causing Serious Bodily Harm conviction. (Doc. 70).

11. On March 2, 2021, the Government responded to the Defendant's objections and agreed that, based upon a reading of the current law pertaining to what crimes constitute "violent crimes," forcible sodomy in Oklahoma does not qualify since it is part of a non-divisible statute that includes statutory rape. Thus, the Court is prohibited from peeking behind the document of conviction to determine if the forcible sodomy was committed by force or not. Thus, since the Defendant does not qualify as an armed career criminal under the current state of the law, his appropriate guideline range should be 151 to 188 months and not 188 to 255 months. (Doc. 71).

**FACTS**

On January 18, 2020, Tahlequah Police Officer Cory Keele (Officer Keele) saw a maroon Dodge truck back out of the driveway at 1107 W. 4th Street in Tahlequah. When Officer Keele turned around to follow the truck, dispatch advised that a firearm had just been reported stolen from 1107 W. 4th Street and that the suspects had just left that address in a maroon truck. (PSR ¶ 11). Officer Keele activated his lights and followed the truck as it turned into a gas station at 1200 S. Muskogee. While the truck slowed to stop, the passenger, later determined to be the Defendant, threw a black object from the passenger window into an open dumpster. The truck then pulled forward and came to a complete stop. (PSR ¶ 12).

Officer Keele went to the rear of the truck, near the dumpster where he observed the black object being tossed out of the truck. He then approached the Defendant and asked him what he threw into the trash can. The Defendant denied throwing anything into the trash and Officer Keele placed him in handcuffs and informed him he was being detained until he could figure out why the Defendant was lying to him. The Defendant was placed in the backseat of the police vehicle while Officer Keele conducted his investigation. (PSR ¶ 12). Officer Keele and other officers looked in the dumpster and saw a firearm in a holster. He contacted dispatch and confirmed the description of the stolen firearm, which was an M&P .40 caliber handgun with red lettering. Officers Keele and Jones retrieved a fully loaded .40 caliber Smith & Wesson M&P Shield with red lettering from the dumpster. (PSR ¶ 13).

Officer Keele went back to his vehicle where the Defendant was and read the Defendant his Miranda rights. The Defendant affirmatively acknowledged that he understood his rights and Officer Keele asked him if he threw the firearm into the trash can. The Defendant told Officer Keele that his wife, the driver of the truck, had nothing to do with it. He said that the victim owed him some money and he "bowed up" against victim and the victim offered to let the Defendant keep the firearm until the victim could pay him back. The Defendant admitted that he was a convicted felon and stated that he was just "holding" the gun. (PSR ¶ 13).

Officer Jones went to the victim's residence to investigate the robbery. The victim informed Officer Jones that the Defendant came to his house and pulled a large knife on him demanding money and then took the gun. This information was communicated back to Officer Keele who was still at the scene of the traffic stop. Officer Keele looked in the truck and found a large knife in the passenger seat area that matched the description provided from the victim to Officer Jones. (PSR ¶ 15).

While the Defendant was in Muskogee County Jail, the Defendant made several threatening phone calls to his family and associates. Threats were made against law enforcement involved in his case and specifically against an FBI Task Force Officer and his family. The Defendant made comments such as "start taking out their motherfucking families," "find out who did it (cops) and have that shit handled," "they want to fuck with my family, we'll fuck with theirs," and "start with T.C.'s fuckin' wife and kids." (PSR ¶¶ 18-22). These threats have caused great emotional stress for the family of T.C., who have had to take extra measures to try and ensure their safety and security. (PSR ¶ 23).

## CRIMINAL HISTORY OF THE DEFENDANT

The Defendant has a long and troubling criminal history. He has a minimum of twelve felony convictions, most of which involve crimes of violence and narcotics. His first felony conviction occurred when he 16 years old when he was convicted of forcible sodomy. He received a three year deferred sentence and judgment, which was accelerated to three years imprisonment less than a year from his sentencing (PSR ¶ 42) when he was convicted for Assault and Battery with a Dangerous Weapon. (PSR ¶ 43). This new charge resulted in a three year sentence to run concurrently with the Forcible Sodomy sentence a year prior. (PSR ¶¶ 42 and 43).

Three years later the Defendant received his third felony conviction at the age of 20. This conviction was for Second Degree Burglary and he received another three years imprisonment. (PSR ¶ 44). Less than three years later the Defendant picked up his fourth and fifth felony convictions for child endangerment (PSR ¶ 46) and knowingly concealing stolen property (PSR ¶ 47), both of which he received suspended sentences, as well as a misdemeanor conviction of Assault and Battery. (PSR ¶ 45). Less than three months later, the Defendant received two more

misdemeanor convictions for Assault and Battery (PSR ¶ 48) and Malicious Injury to Property. (PSR ¶ 49), both of which he again received suspended sentences.

A mere seventeen months later, the Defendant received his sixth felony conviction for Failure to Register as a Sex Offender, where he received a sentence of six months imprisonment (PSR ¶ 50), followed closely with his seventh felony conviction, also for Failure to Register as a Sex Offender, where he again received a suspended sentence of five years imprisonment (PSR ¶ 51). A few years later the Defendant received his eighth felony conviction for Aggravated Assault Causing Serious Bodily Injury where he received two years imprisonment. (PSR ¶ 52).

The Defendant received his ninth felony conviction in 2009 for Possession with Intent to Distribute methamphetamine where he received a ten year sentence with five years suspended. In 2015 his suspended sentence was revoked and sentenced to five years imprisonment (PSR ¶ 53) when he received his tenth felony conviction for Embezzlement, where he received five years imprisonment that was ordered to run concurrent with his most recent revocation (PSR ¶ 54), and his eleventh felony conviction for Possession with Intent to Distribute methamphetamine where he received 10 years imprisonment that was ordered to run concurrent with all of his other cases. (PSR ¶ 55). During that same sentencing docket, the Defendant also was convicted of two misdemeanors, Obtaining Cash or Merchandise by Bogus Check or False Pretenses (PSR ¶ 56), as well as another Assault and Battery where he put his victim in a chokehold. (PSR ¶ 57).

Within a matter of months, the Defendant received his twelfth felony conviction for Possession/Use/Manufacture or Telephone Threat of Incendiary Explosive, where he received another concurrent sentence of three years imprisonment (PSR ¶ 60) and three misdemeanors of Assault and Battery (PSR ¶ 58), Assault and Battery involving slamming someone's leg in a door (PSR ¶ 59), and Trespassing After Being Forbidden. (PSR ¶ 61). In 2019 the Defendant received

two more drug related misdemeanors, where he again received deferred and suspended sentences. (PSR ¶¶ 62 and 63).

The Defendant also has a lengthy list of cases that were ultimately not pursued. These include three felony cases involving Second Degree Burglary and Grand Larceny (PSR ¶ 70), three counts of Assault with a Dangerous Weapon, which were dismissed due to witness failure to appear (PSR ¶ 71), and Possession of Controlled Dangerous Substance. (PSR ¶ 75). Additionally, the Defendant has another Assault and Battery case, which was dismissed in 2006. (PSR ¶ 71).

## ARGUMENT

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." *United States v. Terrell,* 445 F.3d 1261, 1264 (10th Cir. 2006), *overruled on other grounds by Rita v. United States,* 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), *as recognized in United States v. Zamora–Solorzano,* 528 F.3d 1247, 1251 n. 3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. *See Rita v. United States,* 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guidelines sentence. *Id*.

1. **Nature and circumstances of the offense and history and characteristics of the Defendant -- 18 § 3553(a)(1)**

The Defendant is a twelve time convicted felon at the time of his latest offense. Just because his prior convictions no longer qualify him as an armed career criminal due to the recent changes in classifications of crimes under the categorical approach, does not mean that the Defendant is not a violent and dangerous criminal. The Defendant is 47 years old and has spent the past 31 years in the criminal justice system. He is nearly half a century old and has been in serious and constant trouble with the law since he was old enough to drive. He has amassed a

shocking array of criminal convictions, most of which involve victimizing people directly through assaultive behavior (Forcible Sodomy, Assault with a Dangerous Weapon and Aggravated Assault Causing Serious Bodily Injury) and property crimes, as well as serious drug offenses.

This offense involves violence in not only how the Defendant obtained the firearm in this case, but also in how he responded once he was caught. The Defendant decided to get back at the law enforcement involved in his case by directing his family and associates to contact known gang members to take care of these officers and their families. The Defendant made these threats knowing full well that his conversations and solicitations were being monitored by law enforcement. When notified of such monitoring by his family and associates, his common response was "I don't give a fuck" and make further threats. He even preyed upon his newly discovered adult son by telling him if he was a "Pitts" he would handle the situation. The Defendant has shown, through his conduct throughout this case, as well as his criminal history, that he is an extreme danger to society.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense-- 18 U.S.C. § 3553(a)(2)(A)**

A sentence at the high end of the guidelines will reflect the seriousness of the crime, promote respect for the law, and provide just punishment. The Defendant has received numerous suspended and deferred sentences for serious felony offenses, his other sentences have historically run concurrent rather than consecutive, and arguably, he has avoided "just punishment." This Court has the ability to promote respect for the law with the imposition of an upper guideline sentence. By pleading guilty to the Superseding Indictment, the Defendant faces a guideline range of 151 to 188 months imprisonment. A sentence at the low end of the guideline range would allow the Defendant to continue to avoid "just punishment" as he has done in his previous state sentences.

### 3. The need to protect the public from further crimes of the Defendant--18 U.S.C. § 3553(a)(2)(C)

The Government believes that incarceration is the best method of protecting the public from this Defendant. A period of incarceration will protect the public from the Defendant and deter future criminal activity. The Defendant has already received concurrent sentences of deferment and suspension. The public needs to be protected from the Defendant who continues to commit assaultive behavior and serious drug violations. Law enforcement is also a segment of the public that needs to be protected from the Defendant who has established a history of endangering authorities. The best method of protection for the public is a sentence at the high end of the guidelines.

## CONCLUSION

For these reasons, the United States respectfully requests this Court to impose a sentence of 188 months imprisonment based on a guideline range of 151-188 months.

Respectfully submitted,

CHRISTOPHER J. WILSON
Acting United States Attorney

s/    Clay A. Compton

CLAY A. COMPTON, OBA # 19781
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK  74401
(918) 684-5100 (telephone)
(918) 684-5150 (FAX)
clay.compton@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I, hereby certify that on March 3, 2021, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Terry Weber, Attorney for Defendant Hurley Dewayne Pitts.

                                            s/    <u>Clay A. Compton</u>
                                                    CLAY A. COMPTON
                                                    Assistant United States Attorney